# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America<br>v.<br>1. Maria CALDERON-De Copelyn,<br>and<br>2. Patricia CALDERON-Monarrez,<br><br>*Defendants.* | Case No. 17-6392MJ |

DUA DUSTIN

## CRIMINAL COMPLAINT

I, Matthew Gill, Special Agent of the United States Drug Enforcement Administration (DEA), and the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

On or about October 5, 2017, in Maricopa County, in the District of Arizona, Maria CALDERON-De Copelyn and Patricia CALDERON-Monarrez did knowingly and intentionally possess with intent to distribute approximately 4.30 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and approximately 9.20 kilograms of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

I further state that I am a DEA Agent and that this complaint is based on the following facts:

**See attached Statement of Probable Cause incorporated by reference herein.**

REVIEWED BY: AUSA Matthew Binford

☒ Continued on the attached sheet.

*Complainant's signature*

Matthew Gill, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 6, 2017

City and state: Phoenix, Arizona

*Judge's signature*
HONORABLE DAVID K. DUNCAN
United States Magistrate Judge
*Printed name and title*

## Statement of Probable Cause

I, Matthew Gill, Special Agent of the United States Drug Enforcement Administration, Phoenix, Arizona, being duly sworn, hereby depose and state:

1. Your Affiant is a Special Agent with the Drug Enforcement Administration (DEA) and is an investigator/law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) – an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. Your Affiant has been so employed since September, 2014. In September 2014, your Affiant attended DEA Basic Agent Training for 20 weeks in Quantico, Virginia. The training your Affiant received consisted of several hundred combined hours of instruction in the following categories: legal instruction, drug identification, evidence handling, report writing, confidential source management, undercover operations, defensive tactics/firearms, and interview/interrogation. Since becoming a Special Agent, your Affiant has worked in the investigation of Title 21 violations and related crimes.

3. By virtue of my employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to: (a) Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; (b) Interviewing witnesses, confidential sources (CS) and sources of information (SOI) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); (c) Functioning as a case

agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments; (d) Monitoring of Title III investigations; and (e) Conducting complex financial investigation involving the structuring, placement, and layering of large amounts of U.S. currency.

4. Prior to employment with the DEA, your Affiant was employed by the LaGrange, IL Police Department for approximately 6 years as a Police Officer and Criminal Investigator. While employed by the LaGrange, IL Police Department, your Affiant made many drug related arrests and became familiar with methods used by drug traffickers to conduct their illicit activities.

5. In the course of conducting drug investigations, your Affiant has personally interviewed informants and persons involved in the distribution of illegal drugs and the movement of proceeds from illegal drugs. Your Affiant has consulted with other experienced investigators concerning the practices of drug traffickers/money launderers and the best methods of investigating them.

6. This affidavit is made in support of a complaint against Maria CALDERON-De Copelyn (CALDERON-De Copelyn) and Patricia CALDERON-Monarrez (CALDERON-Monarrez) for violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), Possession With Intent to Distribute Controlled Substances.

7. Since January of 2016, members of the DEA, Phoenix Divisional Office (PDO), Task Force Group 3 (TFG3) have been conducting an investigation into a drug trafficking organization operating in Phoenix, Arizona. During the course of the investigation, investigators identified CALDERON-De Copelyn as a person involved in the distribution of illegal drugs in

Phoenix, Arizona. Investigators also identified a silver Kia Borrego used by CALDERON-De Copelyn to facilitate drug trafficking activity. On August 21, 2017, the Honorable Michelle H. Burns, United States Magistrate Judge signed Order No. 17-346MB authorizing the installation and use of a mobile tracking device on the silver Kia Borrego. Order No. 17-346MB also authorized agents to enter onto the property at 1644 East Willetta Street, Phoenix, Arizona to install, maintain, or remove the tracking device. On August 22, 2017, at approximately 3:45 a.m., your Affiant located the silver Kia Borrego at 1644 East Willetta Street, Phoenix, Arizona and attached the tracking device to the undercarriage of the vehicle.

8. On October 5, 2017 at approximately 9:35 p.m., your Affiant and SA Allmon approached 1644 East Willetta, Phoenix, Arizona and observed CALDERON-De Copelyn's silver Kia Borrego parked in the driveway. Agents approached the vehicle in an effort to remove the court-authorized tracking device. Your Affiant crawled under the vehicle and as he attempted to remove the tracking device, heard the vehicle's front driver's side door open. At the same time, SA Allmon observed CALDERON-De Copelyn exit the silver Kia Borrego. Your Affiant and SA Allmon immediately left the area. As Your Affiant and SA Allmon left the area on foot, CALDERON-De Copelyn approached agents driving the silver Kia Borrego. Your Affiant observed a female, later identified as CALDERON-Monarrez, in the front passenger seat of the silver Kia Borrego. Agents continued to attempt to leave the area and were followed by CALDERON-De Copelyn and CALDERON-Monarrez in the silver Kia Borrego.

9. While attempting to leave the area, your Affiant continued to monitor the location of the silver Kia Borrego through the court authorized tracking device. Your Affiant determined that

on October 5, 2017, at approximately 9:43 p.m. the silver Kia Borrego returned to 1644 East Willetta Street, Phoenix, Arizona and parked. At approximately 9:51 p.m., your Affiant determined the silver Kia Borrego left the residence. At approximately 10:13 p.m., the silver Kia Borrego stopped at a parking lot on the north side of Indian School Road at 53rd Avenue, Phoenix, Arizona. On October 5, 2017, at approximately 10:26 p.m., your Affiant received a removal alert from the tracking device, followed by a "power down" alert. Your Affiant determined the court authorized tracking device had been located and removed from the silver Kia Borrego.

10. On October 5, 2017, your Affiant arrived at 53rd Avenue and Indian School Road, Phoenix, Arizona in an attempt to locate and recover the tracking device. Upon arrival, your Affiant observed CALDERON-De Copelyn, CALDERON-Monarrez, and Eligio Heras-Medina (Heras-Medina) standing outside the parked silver Kia Borrego. Your Affiant and SA Allmon parked their official government vehicles behind the silver Kia Borrego and exited. Your Affiant approached the subjects on foot in order to recover the tracking device and announced several times "Policia." CALDERON-De Copelyn, CALDERON-Monarrez, and Heras-Medina walked towards your Affiant and stood in the open area behind the silver Kia Borrego. Your Affiant immediately determined none of the subjects spoke English and contacted Phoenix Police Department (PPD) for assistance communicating with the subjects.

11. While waiting for assistance from PPD officers, your Affiant asked in Spanish if any of the subjects had any weapons. CALDERON-Monarrez said "Yes" and pointed to the front passenger side of the silver Kia Borrego and began walking toward the car. Your Affiant walked

5

with CALDERON-Monarrez to the vehicle passenger side of the vehicle. CALDERON-Monarrez retrieved a green purse from the front passenger side floor board and with two hands opened the purse to expose the contents. When CALDERON-Monarrez opened the bag, your Affiant observed in plain view an ammunition box, several clear plastic baggies containing a white powdery substance believed to be cocaine, and a rolled up grey shirt. CALDERON-Monarrez handed your Affiant the purse and your Affiant unrolled the grey shirt and observed a loaded revolver. Your Affiant removed the revolver, unloaded it, and secured it temporarily. Your Affiant then placed the green purse and remaining contents back in the front passenger seat of the silver Kia Borrego until additional assistance arrived.

12. On October 5, 2017, at approximately 10:57 p.m. several PPD uniformed officers arrived. Upon their arrival, your Affiant spoke with CALDERON-De Copelyn with Spanish speaking PPD Officer Salcedo #9972. While speaking with CALDERON-De Copelyn, your Affiant asked if there were any illegal drugs in the silver Kia Borrego or inside her residence. CALDERON-De Copelyn said "No." Your Affiant then asked CALDERON-De Copelyn if she would allow your Affiant to search her vehicle and residence. CALDERON-De Copelyn provided verbal consent in the presence of PPD Officer Salcedo for a search of the silver Kia Borrego and her residence at 1644 East Willetta Street, Phoenix, Arizona.

13. On October 5, 2017, investigators conducted a search of the silver Kia Borrego. Your Affiant located multiple clear plastic bags containing a white powdery substance believed to be cocaine from the green purse that CALDERON-Monarrez removed from the passenger side floorboard. Inside a green tote bag in the back seat, your Affiant located several brick-shaped

packages wrapped in plastic wrap containing a white powdery substance believed to be cocaine, several packages wrapped in clear plastic containing white powdery substance believed to be cocaine, and a clear plastic bag containing multiple smaller clear plastic baggies each containing a white powdery substance believed to be cocaine, and a white grocery bag containing multiple empty brick-shaped packages consisting of layers of packaging tape and foil believed to be empty kilogram-sized cocaine packages. SA Allmon located a black bookbag in the backseat of the silver Kia Borrego and found several large bundles of an undetermined amount of U.S. currency inside. Your Affiant found approximately nineteen packages wrapped in clear plastic wrap and black tape containing crystalline shards believed to be methamphetamine within a large green duffel bag. In total, investigators located approximately 4.30 kilograms of a white powdery substance believed to be cocaine and approximately 9.2 kilograms of a crystalline substance believed to be methamphetamine.

14. Investigators later conducted a field test of the white powdery substance recovered from the silver Kia Borrego and observed a positive result for the presence of cocaine. Investigators also conducted a field test of the crystalline substance and observed a positive result for the presence of methamphetamine.

15. Investigators spoke with HERAS-Medina at the scene. Heras-Medina stated he was a relative of CALDERON-De Copelyn and CALDERON-Monarrez. Heras-Medina stated he arrived at the parking lot shortly before officers arrived and was there to speak with the CALDERON sisters. He said he did not know anything about the drugs inside the vehicle. Heras-Medina was released from the scene.

16. On October 5, 2017, at approximately 11:45 p.m., SA Thompson, a Spanish-speaking agent, read CALDERON-Monarrez her *Miranda* Warnings from a preprinted card. CALDERON-Monarrez stated she understood her rights and waived them agreeing to answer questions. CALDERON-Monarrez said she lives in Mexico and arrived here in Phoenix two weeks ago to visit her sister, CALDERON-De Copelyn. CALDERON-Monarrez further said that this evening she was at her sister's house when she came in and said someone tried to break in to her car and to call the police. She said they both then entered the silver Kia Borrego and went looking for the two subjects. CALDERON-Monarrez said when she entered the silver Kia Borrego there was a green purse in the center of the car. She said she picked up the purse and felt that it was heavy and believed there was a gun inside. She said that she did not know anything about the drugs in the car.

17. On October 6, 2017, at approximately 3:02 a.m., SA Thompson read CALDERON-De Copelyn her *Miranda* Warnings from a preprinted source. CALDERON-De Copelyn acknowledged understanding her rights and invoked her right to remain silent.

//
//
//

18. Based upon the aforementioned facts, your Affiant submits that there is probable cause to believe that CALDERON-De Copelyn and CALDERON-Monarrez did knowingly and intentionally possess with intent to distribute approximately 4.30 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841 (a)(1) and 841 (b)(1)(B), and approximately 9.20 kilograms of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

_____
Matthew Gill, DEA Special Agent

Sworn to and subscribed before me this 6th day of October, 2017.

_____
HONORABLE DAVID K. DUNCAN
United States Magistrate Judge